959 F.2d 241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
THE PEOPLE OF THE TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Reynaldo P. NUGUID, Defendant-Appellant,
 No. 91-10329.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1992.
Decided April 3, 1992.
 
 Before WISDOM*, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Reynaldo P. Nuguid ("Nuguid") was charged with a series of offenses and sentenced to fourteen years in prison. During his trial, he was provided an interpreter, but the court only used the interpreter on two occasions. Also, during the testimony of Nuguid's only two witnesses, there was no translator at all. Nuguid now claims it was error for the trial court to appoint an interpreter for only part of Nuguid's testimony, and error for the court to fail to appoint an interpreter for Nuguid's two other witnesses. We affirm.
 
 
 3
 * The district court did consider this issue on its merits because of the lack of case law in Guam on the standard for claiming and waiving this right to an interpreter. We too will consider the issue on its merits, but because Nuguid failed to object to this issue at trial, we review only for plain error. United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990) (failure to object at trial means we review for plain error).
 
 II
 
 4
 Nuguid does not argue express waiver is required under Guam law, rather, he argues either federal law or California law should be imported into Guam common law. This argument has no merit.
 
 
 5
 Nuguid claims federal law should be applied in this instance because it would require express waiver of the right to an interpreter. Although the Court Interpreters Act of 1978 sets the standard for interpreter assistance in federal courts,[1] it is not applicable in non-federal Guam courts. Nuguid argues that we should apply federal law because in 1982 the Guam legislature repealed part IV of their code of civil procedure and replaced it with Title 6 of the Guam Code (Evidence).[2] While there is nothing in Title 6 regarding the requirement of express waiver of interpreters, a Comment to the Guam Rules of Evidence notes that the rules are patterned after the Federal Rules of Evidence. Because section 604 of Guam's rules of evidence ("Interpreters"), see 6 Guam Code Ann. § 604, is identical to the federal rule, see Fed.R.Evid. 604, Nuguid claims "[f]ederal law codifies the minimum standards to be applied in the trial of a speaker defendant in Guam."
 
 
 6
 This argument contains some tremendous gaps. First, Fed.R.Evid. 604 merely states that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to take a true translation." This has nothing to do with the fact that under the Court Interpreters Act, the Director of the Administrative Office of the United States Courts established a "program to facilitate the use of certified and otherwise qualified interpreters in judicial proceedings instituted by the United States." 28 U.S.C. § 1827(a). The Act is very specific as to where it applies: "The term 'judicial proceedings instituted by the United States' as used in this section refers to all proceedings, whether criminal or civil ... conducted in, or pursuant to the lawful authority and jurisdiction of a United States district court." 28 U.S.C. § 1827(j). There is no indication that in changing the Guam Rules of Evidence in 1982, the Guam legislature also intended to incorporate an unrelated statute--such as 28 U.S.C. § 1827. By its terms, section 1827 does not apply anywhere but in United States District Courts.
 
 
 7
 Nuguid also tries to apply California law because Guam law is modeled after California law. However, as the Appellate division in the instant case pointed out, the right to an interpreter was added to the California Constitution by electorial initiative in 1974. See People v. Aguilar, 35 Cal.3d 785, 790 (1984) ("Article I, section 14 of the California Constitution was amended in 1974 by vote of the electorate to provide that '[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings' ") (italics omitted). This amendment of the California constitution occurred well after the date Guam adopted its rules of evidence that were based on California law--in 1965. See Appellate Division Opinion at 12. There is no legal basis to interpret Guam law by a change in the California constitution which was imposed by California voters. See id. Prior to this voter initiative, trial courts in California had broad discretion in determining the defendant's understanding of English. In re Raymundo B., 203 Cal.App.3d 1447, 1453 (1988) ("Prior to enactment of this constitutional provision ... trial courts had been afforded broad discretion in determining whether a defendant's comprehension of English was minimal enough to render interpreter services 'necessary.' ") (citations omitted in original). Therefore, even if an express waiver is necessary today in California, there is no reason to impose this requirement onto Guam's common law. By itself, Guam common law does not require express waiver of the right to an interpreter. Therefore Nuguid's failure to request an interpreter can be interpreted as an implied waiver.
 
 
 8
 Assuming, then, that the express waiver requirement of federal or California law does not apply in the instant case, we still must determine whether it was plain error under Guam law for the trial judge not to use an interpreter. A review of the record indicates Nuguid had an adequate understanding of English. It should also be noted that the translator whose services were available to Nuguid was almost never requested. As the Appellate Division quoted:
 
 
 9
 Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.
 
 
 10
 Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir.1989).
 
 
 11
 The Ninth Circuit in Lim explicitly stated: "as long as the defendant's ability to understand the proceedings and communicate with counsel is unimpaired, the appropriate use of interpreters in the courtroom is a matter within the discretion of the court." Lim, 794 F.2d at 471.
 
 
 12
 The problem for Nuguid in this case is that the court made the translator available to him, and he failed to request the translator's services for all but the rephrasing of one question. Nuguid argues he was prevented from using a translator. This was not the case. Nuguid merely never requested the use of the translator. As in Lim, a court appointed interpreter was present and "there was no objection at time of trial, and no direct evidence ... to indicate that there was any particular portion of the original trial that the defendants could not actually understand." Lim, 794 F.2d at 471. In the instant case, the interpreter was present, and there was no indication Nuguid wished to use the interpreter during his own testimony.
 
 
 13
 Moreover, the review of the record indicates that Nuguid understood English adequately.[3] We find that the trial judge made an implied finding that Nuguid had an adequate understanding of English, even if not explicitly stated by the court. Because the trial judge had an interpreter available, she obviously was aware of the possible language problems, and she found that an interpreter was only required on an "as needed" basis. This finding was not clearly erroneous, and certainly not plainly erroneous. As the Appellate Division opinion stated, the occasional misunderstandings do not indicate that the defendant only spoke broken English.
 
 B
 
 14
 Although the court swore in a translator during Nuguid's testimony, during the testimony of Nuguid's only two witnesses, Paul Gopez and Rene Velasco, there was no interpreter. While "an appointment of an interpreter lies within the sound discretion of a trial judge ... such appointment will be disturbed on appeal ... if the judge has abused that discretion." United States v. Salsedo, 607 F.2d 318, 320 (9th Cir.1979).
 
 
 15
 In the instant case, the government argues there is no case law requiring a court sua sponte to appoint an interpreter without a motion. However, we still must review the record to determine if failure to appoint a translator produced a fundamentally unfair trial and a miscarriage of justice. United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986). A review of the record shows Nuguid was not prejudiced by the lack of a translator, and there is no indication that an interpreter was necessary.
 
 
 16
 In Gopez's testimony, while there are places where Gopez does not appear to understand completely the questions, most of his answers reveal an adequate understanding of English. Overall, in the nine pages of trial transcript--in 320 pages total--Gopez seems to understand the questions and give coherent answers in both direct and cross-examination. Failure to appoint an interpreter because there are some isolated instances of momentary confusion does not constitute error on the part of the trial court.
 
 
 17
 During the direct examination of Rene Velasco, the other witness for the defense, Velasco seemed to have near perfect command of English. His English only deteriorated on cross-examination, when the government attorney was trying to impeach Velasco with a statement he made to the police:
 
 
 18
 Velasco: Excuse me, sir. I can't really talk English. Can't explaining this, my testify.
 
 
 19
 Mr. Bostic [for Guam]: I didn't understand what you said.
 
 
 20
 Velasco: I'm not understand ... really speak English.
 
 
 21
 Mr. Bostic: Okay. Did you have a problem understanding Mr. Cook's [the defense attorney's] English?
 
 
 22
 Velasco: (Pauses) No.
 
 
 23
 RT (vol. II) at 53. In the above exchange, Velasco admits to understanding English. Moreover, in all other parts of the testimony, Velasco seems to understand English adequately. There was no abuse of discretion and certainly no plain error on the part of the district court in the implicit finding that a translator was not necessary.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "A criminal defendant who relies principally upon a language other than English has a statutory right to a court-appointed interpreter when his comprehension of the proceedings or ability to communicate with counsel is impaired." United States v. Lim, 794 F.2d 469, 470 (9th Cir.1986) (citing 28 U.S.C. § 1827(d)(1) (1988))
 
 
 [2]
 Title 6 of the Guam Code repealed the Guam Code of Civil Procedure § 1884 which had provided that "[w]hen a witness does not understand and speak the English language and the judge or the court cannot translate the language, an interpreter must be sworn to interpret for him." The standard contained in this former code section gave the discretion to the trial court judge to determine whether a witness does not understand and speak the English language
 
 
 [3]
 As an example that demonstrates Nuguid understood English is the following exchange:
 DIRECT EXAMINATION BY MR. COOK
 Q: Mr. Nuguid, you're going to have to talk into the microphone so it can both be recorded and the jury can hear you; okay?
 A: Yeah.
 Q: Thank you.
 A: I'm gonna tell what happened.
 Q: Okay. I will ask you questions, Mr. Nuguid, and then you answer the questions.
 A: Okay, sir.
 Q: Okay. First of all, how old are you, Mr. Nuguid?
 A: I'm 22.
 Q: Okay. And where do you reside; where do you live?
 A: Dededo. Mogfog, Dededo.
 Q: Okay. And prior to being arrested in this case, were you working?
 A: I work in Mid-Pac.
 Q: Okay, and what was your job at Mid-Pac?
 A: Delivery man.
 Q: Okay. Now, going to March 4th, 1989, did you attend a wedding at the Dela Cruz house?
 A: Yes, sir.
 Q: About what time did you go to the wedding?
 A: Around 10 o'clock.
 Q: After you got to the party at the Deal Cruz house, did anything very strange happen?
 A: Yes, sir.
 RT (Vol. II) at 69-70 (May 24, 1989).